IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MASTERCRAFT FURNITURE, INC., an Oregon corporation,<br><br>    Plaintiff,<br><br>v.<br><br>SABA NORTH AMERICA, LLC, a Michigan limited liability company,<br><br>    Defendant. | Civ. No. 6:14-01303-AA<br><br>OPINION AND ORDER |

Renee E. Rothauge
Adam M. Starr
Markowitz Herbold PC
Suite 3000, Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204-3730
    Attorneys for Plaintiff

Glenn E. Barger
Barger Law Group, PC
4949 Meadows Road, Suite 620
Lake Oswego, OR 97035

Mark H. Verwys
Plunkett Cooney
333 Bridge St. NW, Suite 530
Grand Rapids, MI 49504
    Attorneys for Defendant

1   -  OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Mastercraft Furniture, Inc. ("Mastercraft") filed suit against SABA North America, LLC ("SABA"), alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff seeks damages, interest on its damages, and declaratory relief. Plaintiff now moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 on: (1) plaintiff's first claim for breach of contract on the issue of liability only; (2) plaintiff's second claim for breach of the covenant of good faith and fair dealing on the issue of liability only; and (3) defendant's fifth affirmative defense, asserting limitation of liability. Defendant opposes plaintiff's motion.

Plaintiff's motion for partial summary judgment on the matters listed above is granted.

## I. BACKGROUND

Mastercraft is a furniture company located in Stayton, Oregon, which builds and supplies furniture for companies including IKEA. As a part of its agreement with IKEA, Mastercraft must follow IKEA's manufacturing and sourcing requirements, some of which prohibit Mastercraft from using products in its furniture that contain certain chemicals, including diisobutyl phthalate ("DIBP").

SABA North America, LLC, is a limited liability company located in Michigan which is an international manufacturer and supplier of adhesive. SABA North America, LLC is a subsidiary of

SABA International BV, which is owned by SABA Dinxperlo BV. Sometime during 2012, Mastercraft and SABA entered into negotiations for SABA to supply adhesive to Mastercraft, which Mastercraft would use when building and supplying furniture to IKEA, one of its main customers. On July 2, 2012, SABA presented a quote to Mastercraft. On July 17, 2012, Matercraft agreed with the quote and signed the Equipment Agreement. Subsequently, SABA signed the Equipment Agreement.

On July 20, 2012, James Turner, the President of SABA, signed the IWAY/Mastercraft Vendor Agreement. As part of the agreement, SABA received IKEA'S Specifications document, identifying the chemical compound and substances that IKEA prohibits the use of in its products, including DIBP. SABA Dinxperlo BV signed and acknowledged receiving the Specifications document.

Between August 13, 2012 and March 2013, Mastercraft and SABA entered into a series of contracts for the purchase, sale, shipment of, and payment for 16 totes of Sababond 3175, the agreed-upon adhesive product. The backside of SABA's invoices contained "Terms and Conditions of Sale" in small print. Olson Decl. at 8, Ex. 3. At the top of the Terms and Conditions is a paragraph entitled "Offer and Acceptance." Olson Decl. Ex. 3; Turner Aff., Ex. 5. The first line of that paragraph states, "Seller's [SABA's] offers are made strictly on the terms and conditions stated herein and no others. Acceptance of Seller's offers [by Mastercraft] is strictly limited

to the terms and conditions stated herein and no others." Id. The seventh paragraph of the Terms and Conditions attempts to limit damages for defective adhesive products to the amount of the purchase price of the product. Id. Mastercraft, without reading the Terms and Conditions, paid for the adhesive and incorporated it into its furniture. Olson Decl. at 8.

In September 2012, IKEA conducted a routine test of Mastercraft's furniture and found DIBP in Mastercraft's furniture. After further testing, it was determined that SABA was the source and cause of the DIBP. On April 11, 2013, Jim Turner, SABA's President, sent an email to Mastercraft's President stating that some of the adhesive orders shipped by SABA mistakenly contained DIBP. On August 14, 2014, plaintiff filed this suit.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may grant judgment to a party on all or part of a claim. Id. The substantive law on an issue determines the materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). A factual dispute is genuine if the evidence is such that a reasonable jury could determine the issue in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).

4   -   OPINION AND ORDER

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

### III. DISCUSSION

#### A. Breach of Contract Claims

Plaintiff alleges that defendant breached its contract with plaintiff and violated the covenant of good faith and fair dealing by shipping adhesive product to plaintiff containing DIBP, which is a prohibited chemical substance under the parties' agreement. Defendant does not contest this fact and admits that it shipped some adhesive product to plaintiff containing DIBP. However, defendant argues that there are genuine issues of material fact with respect to the causal relationship between its breach and plaintiff's claimed damages. Plaintiff argues that defendant conflates causation of damages with the amount owed in damages. I agree.

Defendant correctly states that "a breach of contract claim requires the (1) existence of a valid contract; (2) defendant's breach of the contract; and (3) a proximate cause relationship between the defendant's breach and harm to plaintiff." Def.'s Br. at 4 (citing Nw. Nat. Gas Co. v. Chase Gardens, Inc., 333 Or. 304 (2002)). Similarly, defendant correctly states that the elements for a "breach of an implied covenant of good faith and fair dealing are: (1) existence of a valid contract; (2) action by defendant to deprive the plaintiff of expected contractual benefits; and (3) a proximate cause relationship between the defendant's actions and harm to plaintiff." Id. Defendant admits that the statement of facts in plaintiff's motion for partial summary judgment is "substantially correct and can be conceded for the purposes of plaintiff's motion." Def.'s Br. at 2. Consequently, defendant has admitted its breach of contract by mistakenly shipping adhesive containing DIBP, a prohibited chemical, to plaintiff.

For example, defendant admits that 6 of the 16 adhesive orders shipped by SABA to Mastercraft mistakenly contained DIBP, even though SABA was aware that DIBP was forbidden by IKEA and, in turn, Mastercraft. Olson Decl. Ex. 4. Additionally, in an email from SABA to Mastercraft, SABA's President wrote: "Unfortunately it was found that the initial shipments, and several later shipments, were indeed batches of the old formulation which contained DIBP. I cannot give a concrete explanation as to how this occurred." Id.

6    -   OPINION AND ORDER

Despite this admission, defendant argues that plaintiff has not shown there is no genuine issue of material fact as to the element of proximate cause, i.e., that its breach caused plaintiff's claimed damages. Defendant argues specifically that plaintiff has not proffered pleadings, depositions, answers to interrogatories, admissions and affidavits proving that defendant's admitted breach caused the amount of damages claimed by plaintiff. Def.'s Br. at 7. Defendant states that questions of fact remain, including when plaintiff first learned about the DIBP in its furniture, why plaintiff waited over seven months to inform defendant of the DIBP in the adhesive, and how and when IKEA suspended production of plaintiff's furniture. Id. at 8. Defendant thus argues that plaintiff's motion is premature since discovery has not been conducted by either party.

In response, plaintiff argues that even after discovery, there will be no change in the fact that defendant's actions caused some damage to plaintiff by the defendant's breach of the parties' contract, which has already been admitted by defendant. Pl.'s Rep. Br. at 2. I agree. Defendant conflates proving causation of damages with proving the amount of damages; plaintiff need only show that defendant caused some amount of damages for purposes of this motion and does not need to show the exact amount of damages caused.

Plaintiff correctly argues that defendant has not shown a question of fact as to whether the damages it incurred as a result

7   -   OPINION AND ORDER

of defendant's breach equals zero. <u>Chamberlain Grp., Inc. v. Nassimi</u>, 2010 WL 4286192 at *8 (W.D. Wash. Oct. 25, 2010). To the contrary, plaintiff presents Mr. Olson's declaration stating that plaintiff suffered damages as a result of the contaminated adhesive. Olson Decl. at 11. At a minimum, plaintiff incurred testing costs of its furniture, and it could not sell the furniture that had been built utilizing the adhesive with the prohibited chemical in it. <u>Id.</u> Defendant has not shown that plaintiff's damages are equal to zero, and I find that plaintiff has satisfied the damages element for the purposes of its current motion. However, after further discovery, defendant is not foreclosed from challenging the amount of damages claimed to be proximately caused by its breach.

Accordingly, partial summary judgment on Counts I and II as to liability is granted.

<u>B. Defendant's Fifth Affirmative Defense</u>

Plaintiff also moves for summary judgment on defendant's fifth affirmative defense, which claims that plaintiff is barred from recovering damages due to the limitation of liability in defendant's terms and conditions on its invoice form. Plaintiff argues that this is a classic "battle of the forms" case which is governed by UCC section 2-207.

Oregon has codified this section of the UCC as Or. Rev. Stat. §72.2070 which states:

8   -   OPINION AND ORDER

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>     (a) The offer expressly limits acceptance to the terms of the offer;
>     (b) They materially alter it; or
>     (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Uniform Commercial Code. Or. Rev. Stat. §72.2070 (emphasis added).

Plaintiff argues that the terms and conditions did not become part of the agreement when UCC §2-207 is applied. Defendant contends that it did not receive enough information to be able to respond properly to plaintiff's argument that defendant's terms and conditions regarding liability did not become part of the parties' contract. I do not agree.

Here, plaintiff was the offeror and stated its requested quantity and price in its purchase orders to defendant. Pl.'s Mot. Part. Sum. J. at 8. In response, defendant attempted to impose additional terms and conditions regarding liability, in the "Terms

9    -    OPINION AND ORDER

and Conditions of Sale" section of its invoice. As plaintiff points out, defendant's invoice essentially operates as a counteroffer; if assent is given by plaintiff, then these terms become a part of the contract. Diamond Fruit Growers v. Krack Corp, 794 F.2d 1440, 1443(9th Cir. 1986) If no assent is given, then the parties' contract is limited to the terms that both parties agreed upon to be in the contract. Id. at 1443; Or. Rev. Stat. §72.2070(3). Plaintiff contends that it did not assent to the terms and conditions of defendant's invoice, and they are not binding.

Under the Ninth Circuit's ruling in Diamond Fruit Growers, a party must "specifically and unequivocally assent" to new terms of a contract. Diamond Fruit Growers, 794 F.2d at 1445; See also Textile Unlimited, Inc. v. A..BMH & Co., Inc., 240 F.3d 781, 787 (9th Cir. 2001) (same). Here, defendant attempted to impose new terms upon plaintiff through its invoice statements, and defendant presents no evidence that plaintiff "specifically and unequivocally assented" to those new terms. Id.

Generally, a buyer's silence is not considered "assent" to additional terms in a seller's acknowledgment. Smith & Loveless, Inc. v. Caicos Corp., 2005 WL 1533116, at *3 (D. Kan. June 29, 2005) ("plaintiff's theory of 'assent by silence' would not withstand judicial scrutiny"); see also Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1108 (3d Cir. 1992) (rejecting argument that "buyer's continued performance with constructive or

10   -   OPINION AND ORDER

actual knowledge of the disclaimers demonstrated their acceptance of the new terms"); McJunkin Corp. v. Mechanicals, Inc., 888 F.2d 481, 488 (6th Cir. 1989)(assent must be explicit); Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1168 (6th Cir. 1972) (rejecting silence as assent to additional or different terms).

Defendant does not dispute that in this case a contract was formed. Under Or. Rev. Stat. §72.2070(3), the terms of the contract are those upon which the parties agreed, consisting of price, quantity, and place of delivery; and do not include such terms to which both parties' did not agree, such as the limited liability clause. See Textile Unlimited, 240 F.3d at 787 (so stating).

Accordingly, plaintiff's motion for partial summary judgment is granted with respect to defendant's fifth affirmative defense regarding limited liability under the terms and conditions in the invoice.

## CONCLUSION

Therefore, plaintiff's motion for partial summary judgment (doc. 29) is GRANTED as to liability on plaintiff's contract claims and defendant's fifth affirmative defense, with the amount of defendant's damages to be determined at trial or upon further motion. IT IS SO ORDERED.

Dated this 31st day of March, 2015.

_____
Ann Aiken
United States District Judge

11   -   OPINION AND ORDER